**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| LATRICE M. LEE, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>MIDLAND CREDIT MANAGEMENT, INC.<br><br>   Defendant. | Case no. 3:19-cv-01267-BJD-MCR |

**Plaintiff's Response in Opposition to Defendant's Motion To Strike Class Action Allegations And Cross-Motion For Leave To File Class Certification Motion**

Plaintiff LATRICE M. LEE ("Plaintiff"), by and through her undersigned attorney, submits the following as her (**A**) Response in Opposition to Defendant MIDLAND CREDIT MANAGEMENT, INC.'S Motion to Strike (Dkt. 18) and (**B**) Cross-Motion For Leave of Court to File Class Certification Motion, *nunc pro tunc*:

**I. Introduction**

1. On October 31, 2012, Plaintiff filed this putative Class Action Complaint against Defendant MIDLAND CREDIT MANAGEMENT, INC. ("MCM") pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, *et seq.* (**Exhibit A**). Plaintiff obtained a New York & Company branded credit card (the "Subject Debt") from Comenity Bank for personal and household expenses. MCM is a debt collector as defined by § 1692a(6) of the FDCPA because MCM purchases defaulted debts from original creditors and MCM purchased the Subject Debt from Comenity Bank.

2. This case boils down to whether MCM violated Section 1692f(8) of the FDCPA when it mailed collection letters to Plaintiff where the transmittal envelopes contained the words "**Time Sensitive Documents**" in bold font. Section 1692f(8) prohibits a debt collector from "[u]sing any language or symbol, other than the debt

1

collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram . . . ." An image of the offending envelope is depicted below.



3. The Seventh Circuit Court of Appeals recently held that MCM's mailing of a collection letter inside of an envelope marked with the phrase "**TIME SENSITIVE DOCUMENT**" violated § 1692f(8). *See, Preston v. Midland Credit Mgmt.*, __F.3d __, 2020 WL 290451, 2020 U.S. LEXIS 1775 (7th Cir. Jan. 21, 2020).

4. In reversing the district court's order that granted MCM's motion to dismiss, the Seventh Circuit held that MCM's conduct violated the clear prohibitions set forth by Section 1692f(8):

> We conclude that the language of § 1692f(8) is clear, and its application does not lead to absurd results. To the contrary, the prohibition of any writing on an envelope containing a debt collection letter represents a rational policy choice by Congress. Consequently, we conclude that the district court erred in dismissing Mr. Preston's claim under § 1692f(8).
>
> ***
>
> On its face, the prohibition is clear: use of *any* language or symbol on an envelope, except for the debt collector's name (if it does not indicate that the collector is in the business of debt collection) and the debt collector's address, violates subsection (8).
>
> ***

> Because the statutory language neither leads to absurd results nor is ambiguous, resort to legislative history is neither necessary nor appropriate.
>
> ***
>
> In sum, the meaning of § 1692f(8) is clear: When a debt collector communicates with consumers through the mails, it may not use any language or symbol on the envelope except for its business name or address, as long as the name does not indicate that he is in the debt collection business. Turning to the facts here, there is no question that the language "TIME SENSITIVE DOCUMENT" appears on the envelope enclosing a communication to a consumer. It is equally apparent that the language at issue does not fall within the itemized exception set forth in subsection (8): It is not Midland's name nor its address. The inclusion of this phrase thus violates § 1692f(8), and the district court erred in dismissing the claim set forth in Count I of Mr. Preston's complaint.

*Preston*, 2020 U.S. LEXIS 1775, *2, *11, *16, *18.

5. The envelope that was at issue in *Preston* is depicted below:



6. Plaintiff is highlighting the Seventh Circuit's decision in Preston to help explain why MCM has chosen to move to strike the class allegations in this case. Of course, for obvious reasons, MCM would like to avoid an adverse class ruling in this case. Having said, under the totality of the circumstances, MCM's motion to strike fails to provide this Court with a complete picture of what has transpired in this case to date. Simply stated, Plaintiff has acted diligently in her attempts to move this case forward,

consistent with FRCP 1 and FRCP 23(c)(1)(A). MCM, in return, has failed to comply with FRCP 1 in its conduct leading up to its motion to strike and in filing its motion to strike.

## II. Summary of Arguments in Opposition to MCM's Motion to Strike

7.      Federal Rules of Civil Procedure 1 provides that the Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." While Plaintiff did not comply with Local Rule 4.04(b), Plaintiff's non-compliance should be excused where it is clear from the record that Plaintiff acted diligently and in line with FRCP 1.

8.      MCM's Motion to Strike ignores several key facts. First, MCM ignores the fact that it obtained two extensions of time before it answered the complaint. Of course, extensions of time are agreed to as a professional courtesy. However, after receiving additional time to answer the complaint, MCM did not use the extra time in a manner consistent with FRCP 1. For example, MCM's Answer (Dkt. 11) stated that it "is without knowledge" to admit that more than 40 forty form envelopes with the words "**Time Sensitive Documents**" were sent to residents in this district. (**Exhibit B**). *Compare,* Ex. A, ¶¶40, 68, 91 to Ex. B, Def's Ans. to ¶¶40, 68, 91.  MCM's position that is "is without knowledge" is without merit where it has the ability to perform a database search of letters and envelopes sent. MCM's evasive answers are not in keeping with FRCP 1 as its evasive answers allowed it to avoid admitting that "the class is so numerous that joinder of all members is impracticable." *See,* FRCP 23(a)(1). Within days of MCM's answer, Plaintiff asked MCM revise its answer. MCM has refused to do so.

9.      MCM's motion to strike also overlooks the fact its two extensions gave MCM extra time to prepare its affirmative defenses. Among other defenses, MCM asserts that Plaintiff's claims were subject to arbitration as well as a class action waiver. See

Dkt. 11, First Affirmative Defense of "Class Waiver" and Ninth Affirmative Defense of "Arbitration Agreement" (**Exhibit B**). With Plaintiff's having less time to prepare a motion to certify, as a result of granting MCM two extensions to answer, consistent with FRCP1, counsel for Plaintiff asked counsel for MCM to provide copies of the purported arbitration clause and a class action waiver. To date, in inconsistent with FRCP 1, MCM has declined to produce these documents.

### III. Procedural Posture of this Case

#### A. Events Leading up to Defendant's Answer

10.  The Complaint was filed on October 31, 2019, and summons was issued on November 1, 2019. Dkts. 1, 3. Service was accomplished on November 7, 2019, MCM's answer was due 21 days later, on November 28, 2020. Dkt. 5. In consultation with Plaintiff's counsel, on December 2, 2019, MCM filed an unopposed motion to extend the time to answer, setting December 23, 2019, as the date to answer or otherwise respond. Dkts. 6-7. On December 20, 2019, MCM filed a second unopposed motion to extend the time, setting January 6, 2019, to answer or otherwise respond. Dkts. 8-9.

11.  MCM answered the Complaint on January 6, 2020, and in part, MC denied that the claims brought by Plaintiff could be certified. Dkt. 11 (**Exhibit B**). For example, MCM's "First Affirmative Defense ("Class Waiver") states as follows:

> To the extent that the underlying account documents agreed to by Plaintiff or any putative class member contained or incorporated a class action waiver, Plaintiff and/or such putative class members have waived their right to bring this action as a class action and/or to participate in a class action as class members.

12.  MCM's "Ninth Affirmative Defense (Arbitration Agreement)" contends that a class cannot be certified because Plaintiff agreed to arbitrate his claims and because the purported arbitration agreement contained a class action waiver.[1]

---

[1] MCM's Ninth Affirmative Defense states in full:

5

13. To date, MCM has failed to produce the referenced arbitrations agreement (to the extent they even exist) <u>and</u> MCM has failed to move to compel arbitration.

14. While FRCP 23(c)(1)(A) states that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action", "the requirements of Rule 23 cannot be satisfied with skeletal, perfunctory motions for class certification." *Lakeland Reg'l Med. Ctr., Inc. v. Astellas U.S. LLC*, 2012 U.S. Dist. LEXIS 88053, *5-*6, 2012 WL 2402825, *2 (M.D. Fla. June 26, 2012). *See also, Wave Length Hair Salons of Fla., Inc. v. CBL & Assocs. Props.*, 2016 U.S. Dist. LEXIS 177555, *10 (M.D. Fla. Nov. 25 2016) (same).

**B. Plaintiff's Response to Defendant's Answer and Affirmative Defenses**

**(1) Plaintiff Acted Diligently by Asking MCM to Amend its Answer After MCM Improperly Claimed that it Was "Without Knowledge" Sufficient to Admit or Deny FRCP 23(a)(1)'s Element of Numerosity**

15. On January 14, 2020, Plaintiff's counsel emailed defense counsel and raised issues with aspects of MCM's Answer and Affirmative Defenses. **Exhibit C**. In part, Plaintiff's counsel asked MCM's counsel to *amend* MCM's answer to Paragraphs 39, 40, 67, 68, 90, 91 and 131 where the allegations related to FRCP 23(a)(1)'s requirement that a plaintiff demonstrate that "the class is so numerous that joinder of all members is impracticable". Plaintiff's January 14, 2020 email stated in relevant part:

> **Paragraphs 39, 40, 67, 68, 90, 91** and **131** ask MCM to admit that over 40 persons w/in this district were mailed the following:

---

Defendant states that an arbitration agreement governs Plaintiff's account and requires that the claims asserted in this Complaint be brought in arbitration. To that end, Plaintiff has violated the arbitration agreement by asserting this matter in federal court. The arbitration agreements, which would be subject to the putative class plaintiff seeks to represent, also prevents this matter from being certified as a class action.

> "a collection letter by MCM or MCM's vendor where the collection letter was mailed within an envelope that used the words 'Extremely Urgent'."
> "a collection letter by MCM or MCM's vendor where the collection letter was mailed within an envelope that used the words 'Time Sensitive Documents'."
> "a similar form PRE-LEGAL Letter by MCM where the collection letter was mailed inside an "Extremely Urgent".
>
> MCM's answer, that "Defendant is without knowledge of the allegations contained in [these] Paragraph[s] … and therefore denies them" is improper.  MCM clearly knows whether the above allegations are true. Please amend your answer.

**Exhibit C** (January 14, 2020 email from Plaintiff's counsel to defense counsel).

16.     The above quoted email documents three things. First, despite receiving two extensions, in its Answer MCM was unable to answer whether more than forty (40) envelopes were sent to other consumers. Second, MCM's position that it "is without knowledge of the allegations" is highly suspect because MCM has easy access to operating software that would allow MCM to run a simple query to determine how many individuals were sent similar envelopes.  Despite having the ability to run this simple query, MCM's Third Affirmative Defense argues that "Plaintiff's claims are barred because she cannot satisfy any or all of the requirements for maintaining a class action under Fed. R. Civ. P 23."

17.     Third, mindful of the fact that FRCP 23(c)(1)(A) states that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action", Plaintiff wrote to MCM on January 14, 2020 in an attempt to *eliminate any issues* between the parties relative to numerosity. Writing to MCM for this purpose was consistent with FRCP 1.

18.     Fourth, MCM has not amended its answer - despite having easy access to operating software that could easily allow MCM to run a query to determine how many individuals were sent similar envelopes. MCM's refusal to amend its answers to

Paragraphs 39, 40, 67, 68, 90, 91 and 131 of the Complaint is contrary to the stated purpose of FRCP 1 and FRCP 23(c)(1)(A).

19. In summary, consistent with FRCP 1 and FRCP 23(c)(1)(A), Plaintiff's January 14, 2020, email was a good faith attempt to breakthrough MCM's manufactured lack of knowledge with regard to Plaintiff's numerosity based class-action based allegations.

20. As argued below, MCM's Motion to Strike should be denied, and for the additional reasons that follow, Plaintiff should be given leave of court to file her Motion to Certify *nunc pro tunc*.

### (2) Plaintiff Acted Diligently by Asking MCM Produce the Alleged Arbitration Agreement and Class Action Waiver in Response to MCM's Affirmative Defenses

21. Consistent with FRCP 1 and FRCP 23(c)(1)(A), Plaintiff's January 14, 2020 email also asked MCM to produce documents that supported MCM's First Affirmative Defense of "Class Waiver" and Ninth Affirmative Defense of "Arbitration Agreement":

> **AD 1** states "to the extent that the underlying account documents agreed to by Plaintiff … Plaintiff ha[s] waived [her] right to bring this action as a class action action[.]" **AD 9** states as follows in relevant part: "Defendant states that an arbitration agreement governs Plaintiff's account and requires that the claims asserted in this Complaint be brought in arbitration. To that end, Plaintiff has violated the arbitration agreement by asserting this matter in federal court." While discovery has not been issued, consistent with FRCP 1, please produce the documents that support this AD as it relates to Plaintiff. To be clear, I'd rather get to this issue sooner rather than later, as I know that some accounts that MCM collects are not subject to arb clauses or enforceable arb. clauses. In formal discovery we can seek the other potential documents related to putative class members.

(**Exhibit C**).

22. In particular, Plaintiff's January 14, 2020 email asked MCM to produce documents that supported MCM's purported defense of a class action waiver:

> While discovery has not been issued, consistent with FRCP 1, please produce the documents that support this AD as it relates to Plaintiff. To be clear, I'd rather get to this issue sooner rather than later, as I know that some accounts that MCM collects are not subject to arb clauses or enforceable arb. clauses. In formal discovery we can seek the other potential documents related to putative class members.

23. MCM has never produced any arbitration agreement or class action waiver.

24. In summary, consistent with FRCP 1 and FRCP 23(c)(1)(A), Plaintiff's January 14, 2020, email was a good faith attempt to cause MCM to produce the alleged arbitration clause and supporting documentation. There is no reason for MCM to have failed to produce the alleged arbitration clause and supporting documentation.

25. As argued below, MCM's Motion to Strike should be denied and Plaintiff should be given leave of court to file her Motion to Certify *nunc pro tunc*.

### IV. Argument in Opposition to Defendant's Motion to Strike

26. By way of operation of Local Rule 4.04(b), Plaintiff was required to file her motion for class certification by January 29, 2020. MCM filed its Motion to Strike on March 12, 2020. Dkt. 18. In managing a heavy travel related work-load and in preparing to address other cases in advance of the Corona Virus outbreak, Plaintiff has responded as quickly as possible to correct the record and seek leave of court to file her Motion to Certify *nunc pro tunc*.

#### A. Standard of Review

27. "Within 90 days following the filing of the initial complaint in such an action, unless the time is extended by the Court *for cause shown*, the named plaintiff or plaintiffs shall move for a determination under Rule 23(c)(1) as to whether the case is to be maintained as a class action." L.R. 4.04(b) (emphasis supplied). Local Rule 4.04(b) does not define the phrase "for cause shown". FRCP 6(b)(1) refers to the phrase "for *good cause*" (emphasis supplied) and provides that a party may obtain leave to perform a task "after the time has expired if the party failed to act because of excusable neglect":

> (1) In General. When an act may or must be done within a specified time, the court may, for good cause, extend the time:
> 
> \*\*\*
> 
> (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

Fed. R. Civ. P. 6(b)(1).

28. Although Plaintiff does not concede FRCP 6(b)(1) controls the resolution of the present issue before this honorable Court, FRCP6(b)(1)'s "excusable neglect" standards is flexible, as it includes "inadvertence, mistake, or carelessness." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993). Whether a party has show "excusable neglect" involves an equitable review of the record, "taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395.

29. There are four factors to consider in deciding whether excusable neglect exists: "[**1**] the danger of prejudice to the [nonmovant], [**2**] the length of the delay and its potential impact on judicial proceedings, the [**3**] reason for the delay, including whether it was within the reasonable control of the movant, and [**4**] whether the movant acted in good faith." *Pioneer*, 507 U.S. at 395.

### B. Defendant's Motion to Strike Should be Denied Because Plaintiff Has Demonstrated Excusable Neglect in the Face of Defendant's Conduct

30. As described below, Plaintiff can satisfy each of these factors.

#### *(1) MCM Has Suffered No Prejudice*

31. MCM's Motion to Strike does not point to any prejudice that it may suffer.

#### *(2) The Length of the Delay and Its Potential Impact on Proceedings*

32. While Plaintiff was required to move to certify by January 29, 2020, this time-frame did not take into consideration the fact that MCM's answer was originally due on November 28, 2020. Dkt. 5. Further, MCM sought two extensions and finally answered on January 6, 2020. Dkts. 6-7, 8-9, 11. MCM's extensions should be taken into consideration. After MCM finally, answered, on January 14, 2020, Plaintiff wrote to MCM and asked MCM to provide documentation to support its class waiver and arbitration claims MCM refused to comply and did not provide any reasoning to support

its flat-out refusal to provide supporting documentation. See MCM's March 5, 2020 email ("We believe MCM's Answer and Affirmative Defenses is sufficient.") (**Exhibit D**).

33. FRCP 23(c)(1)(A) provides that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." As explained above, however, after MCM asserted arbitration and class waiver as affirmative defenses, Plaintiff considered the practical impact of these defenses, and in good faith, asked MCM to produce the identified documents. Inexplicably, MCM declined to do so.

34. Thus, while certification should be filed "at an early practicable time", at the same time, the filing of a "motion for class certification is premised on sound practical considerations." *Jones v. Hartford Ins. Co. of Midwest*, 243 F.R.D. 694, 695 (N.D. Fla. 2006). While an *obvious* delay in filing "impedes the court's consideration of the issue and may prejudice the rights of class members" (*Id.*), plowing forward in the face of an asserted arbitration defense *may* result in a colossal waste of judicial resources. Given MCM's specious claim that it was unable to admit or deny numerosity, *and* its failure to provide Plaintiff with arbitration based documents, it was not unreasonable for Plaintiff to delay filing a motion to certify. *See, e.g., Lakeland Reg'l Med. Ctr., Inc. v. Astellas U.S. LLC*, 2012 U.S. Dist. LEXIS 88053, *5-*6, 2012 WL 2402825, *2 (M.D. Fla. June 26, 2012) ("Although it would have been a far better choice for Lakeland Regional to seek an extension of time prior to the expiration of the deadline, the Court agrees with Lakeland Regional that, due to the complex nature of this case, a worthwhile motion for class certification could not have been filed within that initial ninety day period after Lakeland Regional filed its complaint."). *See also, Lopera v. Midland Credit Mgmt.*, 2016 U.S. Dist. LEXIS 159329, *5 (M.D. Fla. Nov. 17, 2016) ("Lopera may not have been able to file a worthwhile motion for class certification by the

initial class certification deadline because all discovery, except for the limited amount allowed by the Court, had been stayed pending mediation. Thus, good cause exists to extend the deadline for class certification."(citation omitted)[2]).

35. Given the time-line of events, after providing MCM with two extensions, Plaintiff acted diligently by asking MCM to amend its Answer and provide substantive proof of the purported arbitration agreement and class action waiver. Simply stated, Plaintiff did not fritter and waste the weeks in an offhand way.

### *(3) Plaintiff's Delay Relates to Circumstances Outside of Her Control*

36. MCM, as the purchaser of the debt at issue, is in the best position to produce the arbitration agreement allegedly at issue. Further, given the fact that MCM is one-step removed from the original creditor, MCM is required to produce documentation demonstrating that it purchased the debt at issue *and* that the underlying debt purchase agreement granted MCM the right to enforce arbitration. *See, e.g., Lance v. Midland Credit Mgmt.*, 2019 U.S. Dist. LEXIS 82976, *9 (E.D. Penn. May 16, 2019)("We denied Midland's motion and extended filing deadlines for motions for summary judgment or class certification to allow, among other things, the parties' further inquiry into whether Synchrony Bank sold its right to arbitrate to Midland.").

37. In raising the defense of arbitration and class action waiver, MCM has the burden of proof. If the underlying credit card agreement contains an arbitration clause that applies to the type of claims raised by Plaintiff, and MCM purchased the right to enforce arbitration, it would behoove MCM to provide proof of this defense before

---

[2] *Lopera* ultimately declined to grant the extension sought by the plaintiff, where the plaintiff admitted that he could not "provide a reason for the delay beyond [Lopera's] control[.]" *Id. Lopera* is consistent with other cases denying extensions where the plaintiffs did not provide any reason for why they delayed filing motions to certify. *See, e.g., Jones*, 243 F.R.D. at 696; *Seyboth v. Gen. Motors Corp.,* 2008 U.S. Dist. LEXIS 37736, 2008 WL 1994912, at *1 (M.D. Fla. May 8, 2008).

Plaintiff would spend the time filing the motion to certify and adding this to the Court's busy docket.

38.     While Plaintiff could have thrown caution to the wind and drafted a motion to certify, what would the point of filing a motion to certify if MCM simply responded by finally providing the previously withheld arbitration and class-waiver documents? Again, Plaintiff did not fritter and waste the weeks in an offhand way.

### *(4) The Reasons for Plaintiff's Delay Constitute Good Faith*

39.     As demonstrated above, Plaintiff's failure to comply with Local Rule 4.04 constitutes excusable because Plaintiff's delay in filing for certification resulted from his *good faith attempts to comply with FRCP 1 and 23(c)(1)(A)* - where Plaintiff's counsel promptly asked MCM to amend its answer and produce the alleged arbitration agreement.

40.     For the above reasons and the additional equitable considerations that follow, Plaintiff's failure to timely move for certification demonstrates the existence of "good cause", "excusable neglect" and otherwise comports with FRCP 1 and FRCP 23(c)(1)(A).

### C. Additional Equitable Considerations Support The Denial of Defendant's Motion to Strike

### *(1) MCM's Motion Failed to Provide a Fair Summary of the Record*

41.     Service was accomplished on November 7, 2019. Dkts. 3, 5. MCM's answer was due 21 days later, on November 28, 2020. MCM asked for, and obtained two motions to extend the time to answer and finally answered the Complaint on January 6, 2019. Dkts. 6-9, 11.[3]

---

[3] Plaintiff's counsel immediately reviewed MCM's answer and on January 14, 2020, wrote to MCM pursuant to FRCP 1 to ask MCM to produce documents related to its Affirmative Defenses of "Class Waiver" and "Arbitration Agreement". Exhibit C. Plaintiff also asked MCM to amend its

13

42.     MCM's Motion to Strike was filed in a vacuum and fails to recognize the time-line that resulted in MCM obtaining the benefit of two extensions and how MCM in return ignored Plaintiff's reasonable request that MCM to produce documents related to its Affirmative Defenses of "Class Waiver" and "Arbitration Agreement".

### *(2) The Parties Have Agreed to Move to Extend the Mediation Deadline to Address the Possibility of Class Certification Issues*

43.     On January 10, 2020, the Court entered a Case Management and Scheduling Order with a mediation deadline of April 6, 2020. Dkt. 13. The Parties selected, and the Court has appointed, Rodney A. Max, Esq. as the mediator in this case. Dkt. 16-17. The parties recognized in early March that Mr. Max's schedule did not afford the Parties with any open mediation dates that worked with both Parties. Dkt. 19, ¶3. Thereafter, the Parties originally agreed to ask this Court to extend the mediation deadline to allow them to obtain additional "open" dates from Mr. Max. Dkt. *Id.*

44.     With the outbreak of COVID-19, the Parties and their counsel[4] are attempting to minimize travel and large gatherings and other meetings to the extent possible. Dkt. 19, ¶4. Accordingly, the Parties asked this Honorable Court to allow them until July 31, 2020, to conduct the mediation conference in this case. *Id.*

45.     In moving to extend the mediation deadline, the Parties informed this Court that they "currently have disputes regarding (1) whether Plaintiff's claims are subject to an arbitration clause and must therefore be submitted to arbitration, and (2) whether Plaintiff's claims may be maintained as a class action in any event." *Id.* ¶5. The Parties jointly stated that they "believe that a mediation conference may be more fruitful after briefing of these issues." *Id.* The Parties also represented that "[a]n

---

answers where MCM claimed that it lacked sufficient knowledge to admit that numerosity existed. *Id.*

[4] Plaintiff's counsel is located in Illinois, and Defendant's representatives are located in California.

extension of the mediation deadline to July 31, 2020 will not interfere with any other deadlines in this case. The deadline related to dispositive motions is not until January 8, 2021, and trial is set on the Court's June 7, 2021 trial term." Dkt. 19, ¶6.

46. On March 18, 2020, this Honorable Court granted the parties' motion. Dkt. 20 (granting Dkt. 19).

47. Accordingly, by virtue of the fact that MCM has represented that the parties will need to brief whether MCM is entitled to arbitrate this claims brought by Plaintiff (Dkt. 19, ¶5), no harm or prejudice will result from denying MCM's motion to strike and granting Plaintiff leave to file her motion to certify *nunc pro tunc.*

### V. Plaintiff's Cross Motion For Leave to File Certification Motion *nunc pro tunc*

48. Plaintiff simultaneously seeks leave of court to file her motion to certify *nunc pro tunc*

49. Generally speaking, "two wrongs do not make a right". Here, there are there case MCM's first "wrong" is failure to produce the purported arbitration agreement and class action waiver after it asserted these two defenses in its answer after MCM was provided with two agreed extensions. MCM's second "wrong" is refusing to produce these purported documents after Plaintiff's counsel asked for the documents and invoked FRCP 1 and 23(c)(1)(A). Plaintiff's "wrong" is two-fold. First, Plaintiff's counsel incorrectly assumed that MCM would produce the documents – why would it not produce them if the production would cause Plaintiff to arbitrate her case on an individual basis?

50. If the production of the arbitration agreement and class waiver would assist MCM in gutting the proposed class action, why would MCM flat-out ignore Plaintiff's informal request for the production of the purported documents by invoking FRCP 1 and 23(c)(1)(A)? Plaintiff hopes that MCM does not put form over substance by suggesting that it would have produced the arbitration agreement and class waiver if

Plaintiff has moved for leave of court to conduct limited discovery through a document request for these specific documents. That would be form over substance, where the it would only benefit MCM and cut down on its legal fees if it produced the documents in question. Maybe the documents are not the "silver dagger" that MCM would like them to be and MCM hoped to avoid a certification battle by operation of L.R. 4.04(b)?

51. To recap, Plaintiff's counsel erred by believing that MCM would produce the underlying arbitration agreement where counsel's request was submitted *after MCM asserted that it would arbitrate Plaintiff's claims*. Counsel's related "wrong" is failing to seek an extension before the date to file for certification expired. Plaintiff's counsel now recognizes that he should have filed a formal motion to extend before the deadline when it was apparent that MCM was not willing to "put up or shut up" by producing the purported arbitration agreement or class action waiver.

52. Plaintiff has acted diligently and properly under the circumstances.[5]

53. For these reasons, Plaintiff's request to extend the class certification filing deadline satisfies the excusable neglect standard. *See, e.g., Wave Length Hair Salons of Fla., Inc.*, 2016 U.S. Dist. LEXIS 177555, *11-*12 (granting motion to extend time *nunc pro tunc* where motion to extend was filed one year before the discovery deadline[6]).

54. In light of the impact that COVID-19 is having on Plaintiff's counsel's office (the undersigned may be required to work remotely on a moment's notice), Plaintiff asks that she be allowed to file her class certification motion within two weeks of any order court granting denying MCM's motion and granting her leave to do so.

---

[5] In contrast, see *Wright v. Dyck-O'Neal, Inc.*, 2016 U.S. Dist. LEXIS 92965, *11, *16-*17, *20-*21 (M.D. Fla. June 27, 2016) (4 month delay to compel discovery where the discovery was issued 6 months after the complaint was filed was held to be unacceptable).

[6] The present discovery deadline is December 11, 2020, Dkt. 13.

### VI. Conclusion

55. MCM's Motion to Strike should be denied because it relies on a literal reading of Local Rule 4.04(b) and it in doing so, MCM ignores the fact that Plaintiff attempted to comply with L.R. 4.04(b) and FRCP 23(c)(1)(A) by: (**a**) asking MCM to amend its Answers where it denied lack of knowledge as to FRCP 23(a)(1)'s element of numerosity and (**b**) by asking MCM to produce documents to support MCM's Affirmative Defenses of "Class Waiver" and "Arbitration Agreement".

WHEREFORE, Plaintiff respectfully submits that Defendant's Motion to Strike should be denied and that Plaintiff should be allowed to file her motion to certify within two weeks of any order court denying MCM's motion and granting her leave her motion to certify.

Respectfully submitted, on behalf of

Plaintiff LATRICE M. LEE individually
and on behalf of all others similarly situated,

/s/ Alexander J. Taylor
Alexander J. Taylor, Esq.
Florida Bar No. 1013947
Sulaiman Law Group, Ltd.
2500 South Highland Avenue
Suite 200 Lombard, IL 60148
Telephone: (630) 575-8181
ataylor@sulaimanlaw.com